IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SARAH JO PENDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.  1:14-CV-01287-TWP-DML |
| | ) |
| PETER PECKHAM, *et al.* | ) |
| | ) |
| Defendants. | ) |

<u>AFFIDAVIT OF JANET O'NEAL</u>

I, Janet O'Neal, am an adult competent to testify and who has personal knowledge of the foregoing and declare under the penalties of perjury that:

1.      I am a Classification Supervisor with the Indiana Women's Prison ("IWP"), a prison under the Indiana Department of Correction ("DOC").

2.      In that capacity, I am familiar with the procedures and policies related to placing an offender in the Indiana Women's Prison's administrative segregation units. I also have personal knowledge of the facts and circumstances regarding Plaintiff Pender's placement in the Indiana Women's Prison's administrative segregation unit.

3.      As Classification Supervisor, my daily activities include coordination of all classification services, including admission and orientation, work and education program changes, annual reviews, administrative and disciplinary reviews, classification and disciplinary appeals, facility transfers, time keeping, record keeping, and releases.  In addition, I am responsible for ensuring a classification hearing report form is prepared by the unit team/custody staff reviewers and is properly filed within the offender's packet.

4.      Pursuant to DOC Policy 02-01-111, assignment of an offender to an administrative segregation unit shall be based upon the threat to self, others, property, the security and/or orderly operation of the facility presented by the offender's presence in the general offender population. A high escape risk is one of the criteria used in determining an offender's placement in administrative segregation.

5.      Attached hereto as Exhibit 1 is a true and correct copy of Policy 02-01-111, "The Use and Operation of Adult Offender Administrative Segregation" dated September 1, 2008, which was in effect on the date Pender was assigned to the Segregated Housing Unit ("SHU") at IWP, which is now known as the Administrative Restricted Status Housing Unit ("RSHU"). The procedures IWP utilized regarding administrative segregation in December, 2008 were in compliance with those policies and procedures set forth in Exhibit 1.

6.      Attached hereto as Exhibit 2 is a true and correct copy of Policy 02-01-111, "The Use and Operation of Adult Offender Administrative Segregation Unit" dated August 15, 2011, which was in effect during the time Pender was assigned to the RSHU at IWP.

7.      Attached hereto as Exhibit 3 is a true and correct copy of Policy 02-01-111, "The Use and Operation of Adult Offender Administrative Restricted Status Housing" dated February 25, 2014, which was in effect during the time Pender was assigned to the RSHU at IWP.

8.      Attached hereto as Exhibit 4 is a true and correct copy of Policy 02-01-111, "The Use and Operation of Adult Offender Administrative Restricted Status Housing" dated June 3, 2014, which was in effect during the time Pender was assigned to the RSHU at IWP.

9.      On August 4, 2008 Pender escaped from prison while she was incarcerated at Rockville Correctional Facility.  Pender escaped from the Rockville penitentiary with the assistance of a male correctional officer employed by DOC at that facility. Rockville Correctional

Facility was and is a medium/maximum security prison, which included wire fences, perimeter security and perimeter patrols, and highly restrictive access to and from the facility.

10.     At the time of her escape from Rockville Correctional Facility, Pender was serving a 110 year sentence for the murders of Andrew Cataldi and Tricia Nordman.

11.     On December 20, 2008, Pender was recaptured in Chicago, Illinois by law enforcement officers. She was returned to Indiana and arrived at IWP on December 22, 2008.

12.     On December 22, 2008, Pender was placed in the RSHU at IWP at the direction of Supt. Becky Bennett and Maj. Joe Ditmer. Placement in the RSHU was warranted and proper under DOC's policies because escapee returns are housed under disciplinary status pending a formal conduct hearing.

13.     Following Pender's formal conduct hearing, she was sanctioned to a one year disciplinary term in the RSHU, to end on 12/22/09. She also lost 720 days credit time and was demoted to Credit Class III.

14.     At the conclusion of her disciplinary sanction, she was evaluated for release from RSHU to general population. Due to the seriousness of her offense and IWP's safety and security concerns, she was turned over to administrative RSHU.

15.     Under DOC policy, offenders who are housed in an RSHU are automatically reviewed for continued placement or release to the general population every seven days during the first 60 days of her administrative segregation, and reviewed for continued placement or release to the general population every thirty days thereafter.  The thirty-day review consists of examining the offender's Case Plan and other documents related to behavior, conduct, and safety concerns, as well as reviewing any conduct reports and history. The offender is present for the hearing and able to make comments, ask questions, and raise concerns.

16.     Plaintiff Pender was reviewed for continued placement in the RSHU every thirty days pursuant to DOC policy. In my capacity as Classification Supervisor, I initiated the classification review hearing forms, and upon conclusion of the classification reviews I collected the completed, signed forms and placed them in the offender's packet.

17.     According to DOC records and to my knowledge, Pender refused to participate in the periodic review held on September 5, 2012.

18.     Pender's history and past behavior, including and especially her prior escape from custody with the assistance of a male correctional officer, and other factors lead the Reviewing Committee to keep her on the RSHU.

19.     Pender's placement in restricted status housing was consistently and regularly reviewed in accordance with DOC policy and Indiana Law.

20.     The mental health treatment of offenders in the RSHU was and is exclusively administered by third-party contractors, including Corizon and its mental health professionals. The custodial staff at IWP relies on the mental health professionals employed by the third-party contractors to advise staff whether an offender in the RSHU has a serious mental illness.

21.     During the period of time that Pender was in the RSHU, all offenders placed in the RSHU received periodic mental health assessments by third-party contractors, including Corizon and its mental health professionals.

22.     Carol Naylor, a private contractor, was Plaintiff's Behavioral Health Specialist during the time period relevant to this lawsuit.

23.     Dr. Jill K. Hyland, a private contractor, was Plaintiff's psychiatrist during the time period relevant to this lawsuit.

- 4 -

24.    Dr. Daniel Prober, a private contractor, was Plaintiff's psychologist during the time period relevant to this lawsuit.

25.    At no time during Pender's placement in the RSHU was I made aware that she was a "Seriously Mentally Ill" inmate as that term is defined under Operational Procedure 02-01-111. To my knowledge, no mental health professional ever made such diagnosis of Pender.

26.    Pender was moved from the RSHU to the transitional dorm on January 31, 2014. She was later moved from the transitional dorm to the general prison population on June 14, 2014. As of the date of this declaration, Pender remains housed within the general prison population.

27.    Pender's placement in the RSHU was not arbitrary, discriminatory, or made with any improper motive.

**I affirm, under the penalties for perjury, that the foregoing representations are true and correct to the best of my knowledge and belief.**

8-17-16
Date:

Janet O'Neal
Indiana Women's Prison
Indiana Department of Correction

- 5 -