IN THE
UNITED STATES DISTRICT COURT
SOUTHISN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SARAH JO PENDER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 1:14-CV-01287-TWP-DML ) |
| PETER PECKHAM, *et al.* | ) ) |
| Defendants. | ) |

## AFFIDAVIT OF STEVE MCCAULEY

I, Steve McCauley, am an adult competent to testify and who has personal knowledge of the foregoing and declare under the penalties of perjury that:

1. I am the Superintendent of the Indiana Women's Prison ("IWP"), a prison under the Indiana Department of Correction. I have served in this capacity since February 13, 2009.

2. My day to day activities as Superintendent include directing, managing, and supervising the facility's operations.

3. In that capacity, I am familiar with the procedures and policies related to placing an offender in the Indiana Women's Prison's administrative segregation units. I also have personal knowledge of the facts and circumstances regarding Pender's placement in the Segregated Housing Unit ("SHU") at IWP, which is now known as the Administrative Restricted Status Housing Unit ("RSHU").

4. As Superintendent, my activities include reviewing segregation recommendations made by the Unit Team Review Committee. I in turn make decisions on an offender's placement into or removal from long term segregation, subject to review and approval by the Executive Director of Adult Facilities.

5. On August 4, 2008 Pender escaped from prison while she was incarcerated at Rockville Correctional Facility. Pender escaped from the Rockville penitentiary with the assistance of a male correctional officer employed by DOC at that facility.

6. At the time of her escape, Pender was serving a 110 year sentence for the murders of Andrew Cataldi and Tricia Nordman.

7. On December 22, 2008, after Pender was recaptured, she was placed in the RSHU at IWP at the direction of then-Superintendent Becky Bennett. Placement in the RSHU was warranted and proper under DOC's policies because escapee returns are housed under disciplinary status pending a formal conduct hearing.

8. Following Pender's formal conduct hearing, she was sanctioned to a one year disciplinary term in the RSHU for her escape, to end on December 22, 2009.

9. During my time as the Superintendent of IWP, Pender is the only offender placed into the RSHU at IWP who had 1) escaped from an IDOC maximum security prison, and 2) used manipulative techniques on both staff and fellow inmates to assist her in escaping from said maximum security prison.

10. The only escapes that have occurred at IWP during my time as the Superintendent took place when IWP had a work release component on the grounds of IWP (known as the "Indianapolis Women's Work Release Center"). These escapes were of the offenders who failed to return from work or other types of off-site passes.

11. At the conclusion of her one year disciplinary sanction in the RSHU, Pender was evaluated by IWP staff for release from RSHU to general population. It was determined that Pender would remain in the RSHU due to the seriousness of her offense (both the murder convictions and her subsequent escape) and IWP's safety and security concerns.

12. Under DOC policy, offenders who are housed in an RSHU are automatically reviewed for continued placement or release to the general population every seven (7) days during the first 60 days of her administrative segregation, and reviewed for continued placement or release to the general population every thirty days thereafter. The thirty-day review consists of examining the offender's Case Plan and other documents related to behavior, conduct, and safety concerns, as well as reviewing any conduct reports and history.

13. Pender was reviewed for continued placement in the RSHU every thirty days pursuant to DOC policy. In my capacity as Superintendent, I reviewed the classification review forms and the recommendations of staff as to Pender's ongoing placement in the RSHU, and whether it was appropriate to house her in the general prison population.

14. First and foremost, IDOC's job is to ensure that offenders remain incarcerated, including and especially convicted murderers. Pender had proven that she was an escape risk. It was vital that IWP's staff was always aware of Pender i.e. where she was at and what she was doing.

15. In making her escape from the Rockville penitentiary, Pender reportedly planned her escape in the days or weeks before it happened with a cell-phone provided to her by Scott Spitler, the officer who helped her escape. On August 4, 2008, Pender went to the facility's gymnasium where she changed clothes, hiding her prison uniform above the ceiling's tiling and putting on civilian clothes that Spitler also had given to her. Pender then hid under the seat of a prison van, which Spitler then drove to the prison's gate where he knew, from experience, that the guard would not search his vehicle. Spitler then dropped off Pender at one of the facility's parking lots, where Pender was picked up by a second accomplice and at which point her flight from the law began in earnest.

16.  Furthermore, Pender has at all times maintained her innocence of the crimes she was convicted of and was, at the time of her escape from Rockville, an exemplary inmate.

17.  Pender already made an escape as outlined herein, under circumstances where she had exhibited good behavior. Pender's behavior while housed in the RSHU was not, on its own, indicative that she was no longer an escape risk. Our analysis of her ongoing risk to the safety and security of the facility and the general public contained both objective and subjective components but did not have a "magic" or one-size-fits-all formula. Pender's continued placement in the RSHU was not done arbitrarily. Her continued placement in the RSHU was a difficult but important and necessary discretionary call for IWP staff to make.

18.  Pender's placement in the RSHU was consistently, regularly reviewed in accordance with DOC policy and Indiana Law. IDOC's staff, myself included, had to evaluate Pender on a continuous basis to determine whether IWP could apply enough internal safeguards to ensure that we fulfilled our obligation to keep Pender incarcerated.

19.  When IWP released Pender to the general population, IWP did it in steps by limiting her movement to different parts of the facility. Pender was moved from the RSHU to the transitional dorm on January 31, 2014. This move was made with my approval upon recommendation from IWP staff. Pender was later moved from the transitional dorm to the general prison population on June 14, 2014. As of the date of this declaration, Pender remains housed within the general prison population.

20.  At no time during Pender's placement in the RSHU was I made aware that she was a "Seriously Mentally Ill" inmate as that term is defined under Operational Procedure 02-01-111. To my knowledge, no mental health professional ever made such diagnosis of Pender.

21. As Superintendent I had the decision making authority to move Pender from the RSHU into the general population. This move was reviewed and approved by the Executive Director of Adult Facilities, Michael Osburn.

22. The monthly decisions, during the relevant time period, to keep Pender in the RSHU were not made by and did not involve Ed Buss, Bruce Lemmon, Michael Osburn, Stanley Knight, or James Basinger.

**I affirm, under the penalties for perjury, that the foregoing representations are true and correct to the best of my knowledge and belief.**

_____
Date:

_____
Steve McCauley
Indiana Women's Prison
Indiana Department of Correction