EXH. 3

#47790

Michael Parese, 28 October 2009

It is your position that Administrative Segregation is a classification and not a punishment, like Disciplinary Segregation. How is this true when the conditions, restrictions, housing, and rules are identical between A/S and D/S except that some privileges in A/S are REDUCED, ie. phone access?

With all due respect, even if you call it by another name, A/S is still punishment just the same. Perhaps you aren't familiar with the conditions of A/S. If this is the case, then I hope you will investigate the use of A/S as a punishment, as you appear to support its proper use as a means of separating a high risk offender from open population, without punishing them beyond their sanctioned D/S period.

Thank you for your time and attention.

Sincerely,
Sarah J Pender

SARAH JO PENDER 953968
401 N. RANDOLPH ST
INDPLS, IN 46201

Pender Institutional000188

Exh 3



| | STATE OF INDIANA | |
|---|---|---|
| Mitchell E. Daniels, Jr.<br>Governor | Department of Correction<br>Indiana Government Center – South<br>302 W. Washington Street • Indianapolis, Indiana 46204-2738<br>Phone: (317) 232-5711 • Fax: (317) 232-6798 • Website: www.in.gov/indcorrection/ | Edwin G. Buss<br>Commissioner |

October 28, 2009

Sarah Pender, DOC # 953968
Indiana Women's Prison
401 North Randolph Street
Indianapolis, IN 46201

Dear Ms. Pender:

This letter is in response to your correspondence of October 20, 2009 regarding the difference between Disciplinary Segregation (D/S) and Administrative Segregation (A/S). I have received your letter and will try to respond.

While I understand your belief that there is no difference between D/S and A/S, there are some differences, even though they may not stand out as much in a single facility as compared to all of the Department facilities that have D/S and A/S units. The most significant difference is that an offender is only placed in a D/S unit following a Disciplinary Hearing where the offender has been found guilty of violating a Department or facility rule and as a result the offender has been ordered to D/S for a certain period of time. With A/S, an offender may be placed in an A/S unit with a Classification Hearing based upon the belief of staff that the offender may pose a threat to the orderly operation of the facility or the offender is a potential threat to herself or others. In A/S, the assignment can be for an indefinite period of time.

While it is possible that the conditions and privileges may be similar in D/S and A/S units, generally an offender in an A/S unit should have some more privileges than offenders in a D/S unit. For example, in those facilities that allow offenders to have personal televisions, an offender in A/S does not have a waiting period to be allowed to have a television while an offender in D/S is to wait 90 days before being allowed a television and the television may be taken away if the offender receives a "Report of Conduct."

It should be kept in mind, that the intent of the Department is to protect the public, including staff and offenders. If staff believes that an offender presents a potential threat to the safety and security of the facility or staff or offenders, then the offender can be classified to a housing assignment in an A/S unit. While it may seem like punishment to the offender, it is considered a restricted movement housing assignment.

Also, A/S may be used as part of a "step-down" process for offenders who have been in D/S for a rule violation. The time in A/S is used to determine whether the offender is conforming to expected behavior and could be placed in a general population housing unit without jeopardizing safety and security.

EOE

Pender000021

Exh 3

#49429

Mr. Pavese,                                              3 January 2010

    Thank you for your response dated 28 October 09. It must have been misplaced, as I received it just last week. I appreciate your explanation.

    I apologize for not making myself clear. I have read both the I.D.O.C. policies and the I.W.P. Operational policies for both D/S and A/S, and understand what the differences should be. That's why I had written you.

    Other than D/S being a definite period and A/S being indefinite, the conditions and policies for A/S and D/S are exactly the same at I.W.P. I understand that A/S is supposed to be restrictive, but not based on punitive measures, as it is a housing classification, or used as a step between D/S and general population. But it is not being used that way at I.W.P. It is merely an indeterminate extension of a punishment.

    I have spoken with the Superintendant and there is supposed to be an effort to offer some programming for A/S in the near future. As it stands, we are all just continually being punished without any indication of what is expected of us, as in a R.A.P. or goals, other than continuing to follow the rules, which is expected of everyone. There is no reward or step down process for those who do follow the rules but must remain in A/S for housing. It's just punish, punish, punish.

Pender Institutional000184

3

Exh3

I understand the Dept. of Corrections has designed policy to provide an alternative to general population for high risk offenders, without excessively punishing them. My point was that it was not in effect at I.W.P. and was inquiring what you, as Policy Manager, could do to influence the implementation of better conditions for A/S offenders above what is imposed as punishment on D/S offenders, so that reality reflected policy.

I am not trying to be a pain or a paper-maker. I just think that locking people in a room without social interaction or any privileges is not conducive to behavior modification. Rather, I think it exacerbates mental health issues and teaches people nothing more than positive punishment. Adding basic privileges and individual accountability plans according to DOC policy would be beneficial to the women of IWP.

I am working with the IWP Administration to do some of these things now. When I wrote the letter two months ago, they had been unresponsive to such suggestions to alter A/S policy beyond what D/S policy dictated. I am hoping changes will be made soon. Again, I appreciate your response. I just wanted to clarify myself.

Sincerely,
Sarah Jo Pender 953968
2596 Girls School Rd
Indpls, IN 46214

Pender Institutional000185

3

Exh 3



| Mitchell E. Daniels, Jr.<br>Governor | STATE OF INDIANA<br>Department of Correction<br>Indiana Government Center – South<br>302 W. Washington Street • Indianapolis, Indiana 46204-2738<br>Phone: (317) 232-5711 • Fax: (317) 232-6798 • Website: www.in.gov/indcorrection/ | Edwin G. Buss<br>Commissioner |

January 13, 2010

Sarah Pender, DOC # 953968
Indiana Women's Prison
2596 Girls' School Road
Indianapolis, IN 46214

Dear Ms. Pender:

This letter is in response to your correspondence of January 3, 2010 the operation of Administrative Segregation at the Indiana Women's Prison. I have received your letter and contacted the Superintendent at the Indiana Women's Prison about your concerns.

According to the information that the Superintendent provided, when he arrived at the facility, he discovered that Disciplinary Segregation and Administrative Segregation were being operated in the same manner. He indicated that the move to the new facilities did not cause this situation and that at this time, it is still the same.

The Superintendent did indicate that staff at the facility are looking at this situation and that they are attempting to determine what programming may be offered to offenders who are in Administrative Segregation. This situation is complicated by the fact that both Disciplinary Segregation and Administrative Segregation are on the same unit. However, I am certain that staff will be able to determine what programming will be suitable for implementation for offenders in Administrative Segregation.

It is suggested that you hold on for a short while so that staff can determine what programming can be made available in Administrative Segregation. It is also recommended that you work with staff to assist in the development and implementation of programming in this unit.

Hopefully, this letter has been addressed your concerns.

Sincerely,

Michael J. Pavese
Policy Manager

cc: Superintendent
file (# 49429)

EOE

Pender000023

3 Exh 3