EXH. 9

SARAH JO PENDER
Full Names

2596 N. GIRLS SCHOOL ROAD
Street address or postal box number

INDIANAPOLIS, IN 46214
City, State and zip code

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

Civil Action No._____
(To be supplied by the Court)

SARAH JO PENDER_____Plaintiff

Vs.

PETER PECKHAM_____

STEVE McCAULEY_____

VANESSA TOLBERT_____

SHIRLEY WASHINGTON_____

JANET O'NEAL_____

ED BUSS   sub. BRUCE LEMMON_____

STANLEY KNIGHT   sub. MICHAEL OSBURN      Defendants

Defendants are sued in their Official and Individual Capacities.

## CIVIL RIGHTS COMPLAINT

EXH.9

## I. PARTIES

1. Plaintiff's Information:
   SARAH JO PENDER    953968

   INDIANA WOMEN'S PRISON (IWP) 2596 N. GIRLS SCHOOL ROAD,

   INDIANAPOLIS, IN 46214

2. Defendant's Information:

   The following IWP Officials' address is 2596 N. Girls School Rd, Indpls., IN 46214

   PETER PECKHAM, Major  His duties include supervising all IWP custody staff, developing/modifying operation, safety, and security policies, and conducting segregated housing unit (SHU) classification reviews.

   STEVE McCAULEY, Superintendent  Responsibe for the overall operation of IWP and the welfare of its prisioners.  His duties include final approval of facility SHU classification decisions.

   VANESSA TOLBERT, Lieutenant   SHU Supervisor responsible for directing SHU Staff, creating policies for the operation of SHU, and conducting SHU classification reviews.

   SHIRLEY WASHINGTON, Unit Team Manager  Her duties include serving as Head of SHU Classification reviews and generating classification information and reports.

   JANET O'NEAL, Supervisor of Classification  Her duties include ensuring the quality of reports and classification information generated within the facility, including SHU reviews.

   The following Defendants' address is 302 W. Washington St., Indpls., IN 46204

   ED BUSS, Commissioner of the Dept. of Corrections  Responsible for the operation of the department and each state prison.  Substitute: BRUCE LEMMON for official capacity.

   STANLEY KNIGHT, Deputy commissioner of I.D.O.C.  Responsible for operations within adult I.D.O.C. facilities. Substitute: MICHAEL OSBURN for official capacity.

   ED BUSS: Florida Dept. of Corrections   STANLEY KNIGHT:  Putnamville Corr.Facility
           2601 Blair Stone Road                              1946 West US Hwy. 40
           Tallahassee, FL 32399                              Greencastle, IN 46135

Exh 9

## II. JURISDICTION

Jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

__28__ U.S.C. § __1343 (a) (3)__

## III. BASIS FOR CLAIMS

_____ Complaint Under the Civil Rights Act, 42 U.S.C. § 1983

## IV. CLAIMS

1) Background: On 20 December 2008, plaintiff Sarah Pender was arrested, processed, and two days later transported to the segregation housing unit (SHU) at the Indiana Women's Prison (IWP), where she has been held for 817 days as of this filing and remains there indefinitely. Approximately every 30 days, IWP Officials review Pender's classification to SHU and determine retain/release per Indiana Law and IDOC regulations. Pender's claims arise from the conditions of SHU, and from the content and process of the SHU classification reviews. At all times mentioned, each defendant acted under the color of state law.

2) CLAIM 1: Defendants McCauley, Tolbert, and Peckham designed policies and have maintained conditions in SHU that violate Pender's Eighth Amendment Rights. Inadequate opportunities for out of cell exercise/activity have caused her harm, such as exacerbation of her mental illness, deteriorated cardiovascular health, headaches, lethargy, and self-harming anxiety.

3) On 13 May 2010, Defendants were explicitly warned by mental health Professional Carol Naylor that Pender's lack of adequate access to out of cell exercise/stimulation was directly and negatively impacting Pender's mental health. Defendants took no action, and out of cell hours

Exh 9

eventually declined to 3-4 hours per week in October. In November, Pender grieved the issue. In December, Pender received only 1-3 hours per week, and again grieved it. Currently, Pender's opportunities for meaningful out of cell exercise/activity are still inadequate as a matter of State Law, IDOC Policy, and MHP's recommendations, though simple alternatives exist.

4) CLAIM 2: Defendants Peckham and McCauley created and have maintained a policy that violates Pender's Eighth Amendment right to adequate shelter (lighting), which inflicts unnecessary physical and psychological harm to Pender (i.e. persistent transient insomnia, anxiety, sleep-related appetite dysfunction, headaches, lethargy) for which she has sought medical treatment.

5) The lighting policy created and approved in December 2009 by Defendants is currently maintained as one of constant, mandatory, in-cell illumination 24 hours per day. For 18-19 hours each day, a bright setting is used to illuminate Pender like a coat rack at Wal-Mart. The alternate 5-6 hour night setting shines overhead brightly enough to prepare an IRS 10-40 with itemized deductions. The Policy has no legitimate penological purpose, is applied only to SHU prisoners, and Defendants have refused to consider simple, logical and cost-effective alternatives.

6) That the use of constant illumination produces negative effects on the human psyche is common knowledge to anyone who has seen a prime time TV cop show. District Court Judges recognize these ill effects. It does not take a medical expert to make Defendants aware of the harm; it exacerbates Pender's mental illness, and is really just mean.

7) CLAIM 3: Defendants McCauley, Peckham and Washington violated Pender's Eighth Amendment right to adequate medical care when they did not take action after, beginning in May 2010, being repeatedly made aware of the substantial current harm and risk of future

Exh 9

harm to Pender's mental health, resulting from her prolonged subjection to both specific (inadequate out of cell) and total (reduced environmental stimulation and social isolation) conditions of SHU.

8) Pender has been under the care of IWP Mental Health Professionals (MHP) since September 2009 for treatment of symptoms associated with prolonged confinement. On 2 May 2010, Pender suffered from a traumatic mental break that left her with depressed motor function, disassociation from self, cognitive paralysis, and other strange problems. Pender sought help from MHP Naylor, IWP Investigator Ken Wiltsie, and then defendants Peckham, Washington, and Tolbert on 13 May 2010. MHP Naylor has persistently voiced her concern for Pender's mental health to Defendants and other mental health administrators, but Defendants have intentionally denied her requests to alter Pender's conditions or classification. Defendants have taken no meaningful actions though options are available with minimum impact on Defendants.

9) In June 2010, psychiatrist Dr. Julia Hyland identified "being locked in a room" as the underlying cause of Pender's mental illness, and in response increased Pender's Psychotropic medication. As Pender's mental illness has persisted, Dr, Hyland has prescribed increased levels of medication which, while temporarily helping to reduce symptoms, the symptoms are still experienced (i.e. intense inability to think/concentrate, depression, self-harming anxiety, insomnia, suicidal ideation, hyperresponsivity to stimuli, irrational fear, lethargy, and recurrent disassaciative confusional episodes etc.), inflicting unnecessary pain upon Pender, and exposing Pender to possible serious harm from the physical side-effects of the Medication.

10) CLAIM 4: Defendants Peckham, Washington, McCauley, O'Neal, Knight, and Buss

Exh 9

violated Pender's Fourteenth Amendment right to due process when they did not engage in legally sufficient and meaningful reviews of Pender's continued SHU classification which has resulted in prolonged segregation, depriving her of a liberty interest, and in turn, unnecessary physical and psychological harm.

11) IWP SHU is the most restrictive female SHU within IDOC. Pender has been confined to SHU for 817 days in conditions of varying degrees of harshness that significantly deviate from ordinary prison life and have been, at times, significantly worse than other prisoners in SHU. The duration of Pender's confinement is extraordinarily atypical, in that less than one-twentieth of one percent of women in all of Indiana's prisons have ever experienced. Pender's SHU confinement is indefinite and effectively precludes parole.

12) Indiana law limits prison officials' powers to segregate a prisoner by establishing substantive predicates and requiring periodic reviews of prisoners of any status in SHU. Defendants McCauley, O'Neal, Peckham, and Washington are among the IWP Officials who have conducted Pender's reviews between February 2009 and March 2011. However, IWP Officials identify Downtown Officials, Defendants Buss and Knight, as being the defacto decision makers charged with ordering Pender's release/retain SHU classification. In turn, Knight identified Defendant Washington and Co-Defendants as being responsible.

13) The majority of reviews in 2009 were performa exercises which consisted of nothing more than signing a form. These blank forms were routinely approved by O'Neal and McCauley. The majority of reviews conducted in 2010 was perfunctory and meaningless, in that Pender received no notice, no basis recorded, relevant evidence was not reviewed, and it remains a mystery whether Pender has ever been, or can be, heard by the decision maker charged with releasing her, or present her views to such a person.

Exh 9

14) Pender's attempts to appeal or to be heard by Defendants Knight, Buss, or McCauley have resulted in boilerplate responses or no response at all.

15) Defendants' failure to provide sufficient due process, both procedural and substantive, has resulted in Pender's prolonged and indefinite segregation in SHU, which in turn has caused persistent and, at times, severe mental illness, painful emotional distress, and physical harm to Pender. (Reiterate paragraphs 2,4,8,9 for ill-effects). Additionally, it has caused the need for this civil action and the associated expenses.

16) CLAIM 5: Defendants Buss, Knight, McCauley, Peckham, O'Neal, and Washington violated Pender's right to equal protection under the Fourteenth Amendment when they individually and collectively discriminated against Pender by supplanting the classification process used to determine facility SHU confinement for similarly situated persons with an alternate, constitutionally deficient process, intentionally depriving Pender of a liberty interest in gross disproportion to similarly situated persons, and in turn, causing psychological damage and monetary losses to Pender.

17) Pender alleges that the group most similarly situated to her meriting similar treatment for this purpose of equal protection are other female prisoners classified to a facility SHU. Other women in facility SHU's are reviewed using a process outlined in IDOC policy, a type of bottom-up review with the Superintendent as the end decision maker determining release. In a highly unusual practice, Defendants Buss and Knight (upon information and belief) supplanted this policy with their own, unilaterally dictating a top-down classification decision without making provisions to create a process of notice to Pender, reasons for confinement, a method of presenting her views to the decision makers, or even how to be heard by them. No identifiable review and release process was created or communicated to

Exh 9

Pender. Current procedures do not allow for an appeal beyond the facility Superintendent, so the decision is effectively unappealable except to this court.

18) Pender escaped from IDOC Rockville Correctional Facility on the afternoon of Defendant Commissioner Buss's first day in office. Additionally, her escape drew repeated, negative national media attention to the lax security and sexual misconduct within that prison. Buss was not happy about these events and this became well-known and often recited (by top officials) reason for Buss's retention of control over Pender's initial SHU conditions and continued duration, even down to the minutae of her daily life, an extremely unusual practice, if not unprecedented.

19) The unfair application of this alternate process was intended to produce the result, at least in part, of having a disparate negative impact on Pender, that is, depriving her of a possessed liberty interest for a grossly disproportionate amount of time in SHU than other similarly situated persons. Upon information and belief, the SHU confinement for similarly situated persons is between 30 and 180 days, even for escape offenses and violent acts. It is hard to imagine any process applied fairly and indiscriminately that would result in 817 days in SHU and continuing indefinitely for a single, non-violent act.

20) Defendant Buss delegated his authority, in part, to Defendant Knight and other unnamed officials. Upon information and belief, Defendant Knight controlled some level of this dictatorship process.

21) All Defendants performed actionable conduct by routinely approving Pender's continued SHU confinement and willfully ignoring Pender's rights to due process by performing perfunctory reviews where the outcome was pre-decided. Continuing Pender's SHU confinement is itself an intentional act, and the consequences of their actions were obvious

Exh 9

and inevitable, particularly when using illegitimate means.

22) Minimum due process rights for prisoners have been clearly established for decades. Furthermore, defendants violated their own policies, which no reasonable official would think that their conduct would be unquestionably acceptable.

23) Reiterate harm inflicted in paragraphs 2,4,8,9 and unnecessary stress, time, and money lost as a result of, unfortunately, having to research, write, and file this complaint.

24) CLAIM 6: Defendants Buss, Knight, McCauley, Peckham and Washington violated Pender's Eighth Amendment right to be free from cruel and unusual punishment when they continued to house Pender in SHU conditions that deprive her of her mental health.

25) Reiterate paragraphs 2-9.

26) Pender has suffered sufficiently serious mental injury from continuous subjection to SHU conditions to which the Defendants have been deliberately indifferent. Defendants have taken no serious measures to ameliorate the conditions causing/exacerbating Pender's mental illness after having active, subjective knowledge that SHU conditions presented excessive risk of harm to Pender's mental health.

27) Lt. Tolbert has made alternative suggestions which Defendants have denied.

## V. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the conditions of your imprisonment?
   ____Yes   _X_ No

2. I have previously exhausted available administrative remedies regarding the events or acts complained of in Part III of this complaint.   _X_ Yes   ____No

Exh 9

Pender used the grievance system to address the issue in claims 1, 2, 6, and part of 3. Grievances on lighting were initiated 23 January 2011, and appeals exhausted 17 February 2011, with no response. Grievances on out of cell exercises initiated 5 November 2010, and appeals exhausted 23 December 2010, with no response. Appeals for claims 3, 4, and 5 were initiated 21 October 2010, and exhausted 5 November 2010, with no response. Pender's attempt to use grievance system for claims 4 and 5 were rejected 3 December 2010. There are no other available administrative remedies.

## VI. REQUEST FOR RELIEF

I request the following relief:

1) Declaration that the acts or omissions of Defendants violated Pender's constitutional rights.

2) Order nominal and compensatory damages where applicable.

3) Grant an injunction enjoining Defendants from using excessive lighting absent a severe and legitimate medical, safety, or security need.

4) Grant an injunction ordering Defendants to insure a minimum number of meaningful out of cell exercise/activity, particularly for at-risk prisoners (mentally ill or long term stays).

5) Grant an injunction enjoining Defendants from housing at risk or mentally ill prisoners in current SHU conditions, specifically Pender.

Exh 9

6) Order Defendants to comply with due process requirements with regards to SHU reviews.

7) Order punitive damages in proportions to the spirit with which each, non-immune Defendant's action or inaction was carried out.

8) Declaration that Defendants should be fair, play by the rules, and stop being mean.

9) Any other relief that this Court deems appropriate.

_____   _____
Original signature of attorney (if any)   Plaintiff's Original Signature

Date:_____

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and accurate.

Executed at _____ on _____.
                    (location)                              (date)

_____
Plaintiff's Original Signature

Plaintiff demands a trial by jury.   _X_ Yes  ____ No

Exh 9